**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DANIELLE EARVIN #L3421**                                          **PLAINTIFF**

**VS.**                                   **CIVIL ACTION NO.: 3:17CV195-DCB-LRA**

**PATRICIA TAYLOR**                                           **DEFENDANT**

<u>**REPORT AND RECOMMENDATION**</u>
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

This cause is before the undersigned United States Magistrate Judge for a recommendation on the Motion for Summary Judgment [#34] filed by Defendant Patricia Taylor [hereinafter "Defendant" or "Taylor"] and the response filed by Plaintiff Danielle Earvin [hereinafter "Plaintiff" or "Earvin"]. After a review of the pleadings and the applicable law, as augmented by Plaintiff's testimony at the omnibus hearing, the undersigned recommends that the motion should be granted. The reasons for that recommendation are set forth hereafter.

<u>**STATEMENT OF FACTS**</u>

Jurisdiction of this case is based upon 42 U.S.C. §1983. Plaintiff was housed in the custody of the Mississippi Department of Corrections [MDOC] in the East Mississippi Correctional Facility [EMCF] when he filed this lawsuit. According to the Complaint [1], and supplemental pleading [#9], as well as his sworn testimony at the hearing, Earvin worked in the kitchen at EMCF under Defendant Patricia Taylor, an employee of Trinity Food Services, Inc. Trinity is a private company which provides the food service at EMCF. On October 25, 2016, Earvin received a rules violation report

1

[RVR No. 01651249] from Taylor.  Taylor accused him of having assaulted her with a milk crate.  Earvin denies that he did so.  According to Earvin, he was sliding a milk crate and reached down to prevent it from hitting Taylor.

On or about October 27, 2016, Earvin filed a grievance with the Administrative Remedy Program [ARP], ARP EMCF16-1685, complaining about the incident and about the RVR. [34-4].  His complaint was 12 pages and complained about the way that Taylor had treated him.  He requested that she be fired and that he be awarded money damages.  The ARP was rejected by the ARP because the relief requested was "beyond the power of the Mississippi Department of Corrections to grant." [34-4, p. 11.]

Earvin filed another ARP in January 2017, ARP EMCF-17-96, alleging that Defendant wrote him an RVR on October 25, 2016, charging that he assaulted Defendant Taylor with a milk crate.  He lost his job in the kitchen the following week.  Plaintiff requested that he be returned to his institutional work assignment in the kitchen [34-5].  This ARP was accepted, and Earvin signed for his First Step Response on May 31, 2017.  The First Step Response was from Mr. Glass, and stated:  "I am reviewing your complaint and talking to you and Ms. Taylor at this time.  You will not be able to come back to work at this time." [34-5, p. 6].  According to the sworn affidavit of the Administrative Remedy Program Coordinator, Tina Bolden, Earvin did not enter the Second Step of the ARP and never submitted a request to go forward.  His ARP was closed because no request for Second Step relief was submitted within five days of his

First Step Response. [34-5]. Plaintiff filed this Complaint on March 22, 2017, prior to his receipt of the First Step Response on May 31, 2017.

Earvin testified that he filed his first ARP on October 27, 2016. Then, on October 31, 2016, Taylor fired him from his work in the kitchen. Earvin concludes that the firing was in retaliation for having filed his ARP, even though Defendant Taylor wrote the RVR prior to the filing of the ARP. He was without his job for four or five months. The RVR Taylor wrote was apparently dismissed, as the disciplinary department has no record of it, according to Earvin.

Earvin asked to amend his Complaint to add other people as defendants, including Warden Shaw, Major Dykes, and others, alleging that they conspired with Taylor in this situation. He admitted that he had not exhausted his administrative remedies as to these Defendants, and his motion to amend was denied.

As relief, Earvin asks the Court to remove Taylor from Trinity Food Services and to grant him $15,000 in monetary damages for pain and suffering and slander. He also asks to have his job back, in the same position. [1, p. 5].

## SUMMARY JUDGMENT STANDARD

The familiar standard for the entry of summary judgment comes from Fed. R. Civ. P. 56(a), which requires its entry "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In satisfying this burden, however, the opposing party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Matsushita.* at 586, n. 11; *see also Beard v. Banks*, 548 U.S. 521, 529 (2006); *Aduddle v. Body*, 277 F. App'x 459, 460 (5th Cir. 2008); Fed.R.Civ.P. 56(e).

*Pro se* pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Coleman v. Lincoln Parish Detention Center*, 858 F.3d 307, 309 (5th Cir. 2017). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. *Coleman,* 858 F.3d at 309; *see also Propes v. Quarterman*, 573 F.3d 225, 231

4

(5th Cir. 2009) ("A *pro se* litigant gets a liberal reading of his pleadings, but the basic procedural obligations still apply.").

## ANALYSIS OF THE LAW

Defendant argues that Plaintiff has not exhausted his claims with the ARP, and his Complaint should be dismissed for this reason. Plaintiff started the process but failed to complete it prior to filing this Complaint. After Plaintiff received the First Step response on May 31, 2017, he failed to file a Second Step appeal. He had filed this Complaint on March 22, 2017, nearly two months before he received his First Step response.

The applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA governs Earvin's claims. Accordingly, he was required to properly complete the ARP process in its entirety before filing suit under §1983.

The Supreme Court has confirmed that exhaustion is mandatory under the PLRA and that "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The Fifth Circuit applies that holding strictly and has recognized that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (*per curiam*);

5

*Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012)

(quoting *Gonzalez*). Summing up the applicable law in *Gonzalez*, the court concluded:

> After *Woodford* and *Jones*, there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. . . . District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez*, 702 F.3d at 788.

The law clearly requires that Earvin must have (1) filed a timely grievance regarding the incident and (2) completed the grievance process *prior to* submitting his Complaint. He admittedly failed to do so. In his Complaint, Earvin stated that he had not received a response from his second January 10, 2017, on March 10, 2017, when he wrote his Complaint. [1, p. 3]. He stated that he knows "they are outside the 45 days time period." *Id.* He concludes that these actions fulfill his exhaustion requirement.

The case of *Wilson v. Epps*, 776 F.3d 296 (5th Cir. 2015) is controlling. The plaintiff argued that the prison's failure to respond to his grievances excused his non-exhaustion, and that is partially Earvin's position herein. The Fifth Circuit clearly rejected that stance, finding that a prison's failure to respond at preliminary steps in its grievance process does not relieve a prisoner of the duty to complete the remaining steps. *Id.* In *Wilson,* the Court rejected the inmate's assertions that the ARP program was unconstitutional because it gave MDOC too much time to respond; it approved the ARP's "backlogging" requirement. *Id.* at 300-301. The Court also rejected the inmate's claim that his remedies should be deemed exhausted because MDOC failed timely to respond to

his request for administrative remedy. Noting that the prisoner must pursue the grievance remedy to its conclusion, the Court explained:

> This requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process. Thus, it is only if the prison fails to respond at the last step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.

*Id.* at 301. Earvin never appealed the First Step Response, so he never became entitled to sue in this Court.

To defeat a summary judgment motion, competent evidence must be provided to defeat that set forth by the movant. Although Earvin contends that he has exhausted, and that the ARP did not respond to his second complaint in a timely manner, "'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' will not satisfy the nonmoving party's burden on summary judgment." *Garner v. Moore,* 536 Fed. Appx. 446, 449 (5th Cir. 2013) (quoting *Freeman v. Tex. Dep't of Criminal Justice,* 369 F.3d 854, 860 (5th Cir. 2004). In this case, Defendant has provided substantial evidence indicating Earvin did not completely exhaust his administrative remedies before filing this suit. He has failed to rebut that evidence, and summary judgment should be entered.

Alternatively, the undersigned has considered Earvin's claims on the merits and finds that no constitutional claim could be established under the facts described by Earvin. He contends that Defendant Taylor disliked him for no apparent reason and

made his job difficult. She harassed him constantly and defamed him. Earvin charges that she wrote him an RVR for physical assault, yet he received no punishment for the RVR. She fired him from the cafeteria after she wrote him an RVR and after he filed an ARP against her. He went without this job for four or five months. He has no physical injuries but points out that other inmates and guards are harsh "on you if you verbally or physically abuse women." He requests a monetary award and requests that Defendant be fired and that he should get his job back. He obviously has his job back, because he testified that he lost it for "four or five months."

First, Earvin has no Due Process rights regarding his work assignment in prison. Case law establishes that prison inmates have no entitlement to particular jobs. *Nash v. Wilkinson*, 124 Fed.Appx. 254 (5th Cir. 2005) (inmate had no liberty interest in his work or housing assignment and cannot complain about lack of procedural due process in connection with the loss of those privileges) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999); and *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989)). *See also Wallace v. Robinson*, 940 F.2d 243 (7th Cir. 1991); *Flittie v. Solem*, 827 F.2d 276 (8th Cir. 1987); *McGee v. Mayo*, 211 Fed.Appx. 492 (7th Cir. 2006).

Defendant Taylor's verbal abuse and humiliation and harassment also cannot establish a constitutional claim. Such behavior is not actionable under Section 1983. *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). For these reasons, neither the

loss of his job or work assignment or Taylor's harassing treatment can establish constitutional claims.

Plaintiff also contends that Defendant retaliated against him for exercising his right to file an ARP against her. "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). However, to state a viable claim for retaliation, a prisoner must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citations omitted); *McDonald v. Steward*, 132 F.3d 224, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriquez*, 110 F.3d 299, 210 (5th Cir. 1997). The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred. *McDonald*, 132 F.3d at 231.  The adverse act alleged must also be more than *de minimis. Morris*, 449 F.3d at 686-87.

In the undersigned's opinion, Earvin cannot meet this four-part test under the circumstances described by him. Defendant wrote the RVR on October 25, 2016, *prior* to Plaintiff filling any grievances. Although he was not officially dismissed from that job until a few days later, when he returned to work, the RVR shows that his job loss was

9

caused by his behavior during the incident with the milk crate: not because he filed a grievance. Plaintiff continued to file grievances after the RVR was issued, so he was not deterred by Defendant's actions. Causation cannot be shown under the test; Plaintiff cannot show that "but for" Taylor's alleged retaliatory motive, he would not have lost his job. Further, he had no constitutional right to a particular job, and its loss should not be considered more than *de minimis*. Defendant is entitled to a judgment at law.

The undersigned also notes Defendant's assertion that she is a private party, and her actions cannot be "fairly attributable to the state" so as to allow liability under Section 1983. [35, pp. 11-13]. Because the undersigned recommends dismissal based upon non-exhaustion and the merits of the claims, it is unnecessary to consider this argument.

For these reasons, the undersigned recommends that Defendant's Motion for Summary Judgment [34] be **granted** and that Danielle Earvin's Complaint be dismissed. Final Judgment in favor of Defendant Patricia Taylor should be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted, this the 26th day of June 2019.

                                                    /s/Linda R. Anderson
                                       UNITED STATES MAGISTRATE JUDGE